**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | |
| **Plaintiff,** | **CASE NO. 2:21-CR-222** |
| **v.** | **JUDGE MICHAEL H. WATSON** |
| **MARCUS C. BEATTY,** | **Sentencing Memorandum of the United States** |
| **Defendant.** | |

The United States hereby submits its Sentencing Memorandum with respect to Defendant Marcus C. Beatty. There are no pending objections. For the reasons that follow, a sentence of 36 months of imprisonment, 3 years of supervised release, and a restitution order of $456,408.55 would be sufficient but not greater than necessary to achieve the statutory goals of sentencing. Forfeiture is also required in this case.

**BACKGROUND**

On November 16, 2021, a grand jury in this District returned an Indictment charging Defendant Marcus C. Beatty with one count of Mail Fraud, in violation of 18 U.S.C. § 1341, and one count of Wire Fraud, in violation of 18 U.S.C. § 1343. (Indictment, R.2.) The Indictment charged that Mr. Beatty engaged in a fraud scheme to unlawfully obtain funds from state unclaimed-funds agencies from 2011 through 2018. (*Id.*) An arrest warrant was issued.

On May 4, 2022, Mr. Beatty was arrested and released subject to certain conditions. (Order, R.9.)

On September 29, 2022, the Parties filed a Plea Agreement, in which Mr. Beatty agreed to plead guilty to the Mail Fraud count of the Indictment. (Plea Agreement, R.14 at 50.) Mr. Beatty agreed to pay $456,408.55 in restitution to the fraud victims and agreed that the same

figure should be used to calculate the applicable guidelines range. (*Id.* at 52.) He also agreed to surrender for forfeiture all proceeds of the fraud scheme. (*Id.* at 53.) On October 26, 2022, Mr. Beatty offered his guilty plea before Magistrate Judge King. (*See* Minute Entry, R.20.) On November 16, 2022, the Court issued an order accepting his guilty plea. (Order, R.24.)

The Probation Office released the Final Presentence Investigation Report on January 12, 2023. (PSR, R.26.) Sentencing is scheduled for February 22, 2023.

## ARGUMENT

The Probation Officer calculated that Mr. Beatty's Total Offense Level is 16 and that his Criminal History Category is IV. PSR ¶¶ 41, 48. The Probation Officer correctly noted that these calculations would result in advisory guidelines ranges of 31 to 41 months of imprisonment, a fine of $10,000 to $912,817.10, and a term of supervised release of 1 to 3 years. PSR ¶¶ 77, 81, 87. There are no unresolved objections.

Considering the § 3553(a) factors, the United States recommends a sentence of 36 months in prison, a three-year term of supervised release, and a restitution order for $456,408.55. Forfeiture is also required.

*Nature and circumstances of the offense.* Mr. Beatty engaged in a significant fraud scheme from at least June 2011 through at least March 2018. PSR ¶ 12. The object of the fraud scheme was to steal from the Ohio Department of Commerce Division of Unclaimed Funds.

The fraud involved the process by which states manage unclaimed property. In Ohio, as in many other states, when funds held by a financial institution are inactive for a certain length of time, the funds legally become "unclaimed funds." PSR ¶ 13. Under Ohio law, these funds do not become the property of (or escheat to) the state. *Id.* Instead, the Ohio Department of Commerce Division of Unclaimed Funds holds the unclaimed funds in trust for the true owners.

*Id.* True owners are authorized to file claims with the Division of Unclaimed Funds to recover the property. *Id.* The Division uses the information contained in the claim to determine whether the claimant is the true owner of the property. *Id.* If the agency determines that the claimant has a right to receive the funds, it provides the property to the claimant. *Id.*

For nearly eight years, Mr. Beatty repeatedly filed fraudulent claims for unclaimed funds. PSR ¶ 14. He did so through a fairly intricate process. First, he identified Ohio businesses whose registrations had been canceled. *Id.* He reinstated their registrations with the Ohio Secretary of State using fraudulent paperwork. *Id.* Having done so, he changed the names of these companies to the names of companies for which the Division of Unclaimed Funds held money in trust. *Id.* He then filed fraudulent claims with the Division to obtain the unclaimed funds. *Id.*

For example, A&B Economy Meats, Inc., was a real Ohio company that was active between 1952 and 1993, when its registration was cancelled. PSR ¶ 15. In 2005, Mr. Beatty filed paperwork with the Ohio Secretary of State to reinstate the company. *Id.* In 2011, he changed the name of A&B Economy Meats, Inc., to Beatty Plumbing & Supply, Inc. *Id.* Beatty Plumbing & Supply was a real Ohio company for which the Division of Unclaimed Funds held unclaimed property. *Id.* Mr. Beatty filed a fraudulent claim to recover the unclaimed funds. *Id.* The Division granted the claim and issued a warrant (*i.e.*, an uncashed check) in the amount of $18,666.75 payable to the company. *Id.* Mr. Beatty had previously opened a bank account in the company's name, and he deposited the warrant the same day it was issued. *Id.*

Mr. Beatty repeated this fraudulent pattern several times. He fraudulently obtained unclaimed funds held in trust for five Ohio companies. PSR ¶ 14. He also filed several false claims with the unclaimed-funds agencies in Alabama, Nebraska, New Jersey, and Pennsylvania,

but those states did not approve any of the claims. PSR ¶ 23. The overall intended loss was $465,911.42, and the actual loss was $456,408.55. PSR ¶ 24.

The guidelines range appropriately captures the seriousness of this fraud scheme, and nothing in the nature and circumstances of the offense warrants a below-guidelines sentence.

*Need to afford adequate deterrence and to promote respect for the law.* This offense is part of Mr. Beatty's unbroken pattern of financial crimes dating back to at least 2003. In 2005, Mr. Beatty was convicted in this Court for Bank Fraud, Credit Card Fraud, and Mail Fraud. PSR ¶ 43. As with the current offense, he committed his crime by creating false businesses and company names. (*See* Statement of Facts, R.5 in S.D. Ohio case no. 1:05-CR-121.) He committed three separate crimes. First, he deposited counterfeit checks drawn on the accounts of victim businesses. *Id.* Second, he opened multiple American Express accounts in the names of fake businesses and racked up $132,662.83 in charges. *Id.* In a fraudulent effort to keep the accounts open, he attempted to pay the bills with counterfeit checks. *Id.* Third, he concocted a scheme where he defrauded a collections company, again using a counterfeit check. *Id.* In July 2006, Judge Beckwith sentenced Mr. Beatty to 33 months of imprisonment and 3 years of supervised release. PSR ¶ 43.

This did not suffice to deter his criminal activity. His federal supervision started on March 6, 2009, and by September 26, 2009, he was passing bad checks to get a car loan. *Id.* He was arrested. His federal supervised release was revoked, resulting in a new sentence of time served (176 days) plus 3 years of supervised release. *Id.* His supervised release term ended on April 26, 2014. *Id.* That means he was committing the instant offense for almost three years while on supervised release. *See* PSR ¶ 47. Mr. Beatty also was convicted in state court for passing bad checks, and he later was convicted of Operating a Vehicle Impaired. PSR ¶¶ 44–45.

4

Putting it all together, Mr. Beatty has been either involved in a fraud scheme or in prison from a fraud conviction from at least 2003 through at least 2018. *See* PSR ¶¶ 12, 43–45. His repeated criminal activity while on supervised release demonstrates that his prior federal conviction and sentence have not deterred him from reoffending. A guidelines sentence here is necessary to protect the public, promote respect for the law, and afford specific deterrence.

The sentence should also afford general deterrence to others. The Sixth Circuit has recognized that "[b]ecause economic and fraud-based crimes are more rational, cool, and calculated than sudden crimes of passion or opportunity, these crimes are prime candidates for general deterrence." *United States v. Peppel*, 707 F.3d 627, 637 (6th Cir. 2013) (internal quotation marks omitted). The recommended sentence would be a clear message that crimes like Mr. Beatty's will be punished.

*History and characteristics of the defendant.* Mr. Beatty has multiple diagnosed health conditions, including a neurological disorder called Moersch-Waltman Syndrome, or Stiff Person Syndrome. PSR ¶¶ 59–61. These conditions do not, however, warrant a noncustodial sentence. Notably, Mr. Beatty was diagnosed with Moersch-Waltman Syndrome in 2007 or 2008, and he continued committing fraud until at least 2018. PSR ¶ 59. In fact, the entire fraud scheme charged in this case came after his diagnosis. *See* PSR ¶ 12. This suggests that Mr. Beatty's physical condition is not so debilitating that a prison sentence is precluded. Instead, his physical condition, as well as any mental health conditions that may result from the circumstances of his childhood, are appropriate considerations for his BOP placement. The United States believes it would be appropriate for the BOP to assess whether Mr. Beatty should serve his sentence in a Federal Medical Center.

Given the nature and circumstances of Mr. Beatty's offense, his history and characteristics, the need for deterrence, the need to promote respect for the law, and the other circumstances of this case, the recommended sentence would satisfy 18 U.S.C. § 3553(a).

**CONCLUSION**

For these reasons, a sentence of 36 months of imprisonment, 3 years of supervised release, and a restitution order of $456,408.55 would be sufficient but not greater than necessary to achieve the statutory goals of sentencing. Forfeiture is also required in this case.

**Respectfully submitted,**

KENNETH L. PARKER
United States Attorney


s/ Peter K. Glenn-Applegate
PETER K. GLENN-APPLEGATE (0088708)
Assistant United States Attorney
303 Marconi Boulevard, Suite 200
Columbus, OH 43215
Phone No.: (614) 469-5715
Fax No.: (614) 469-5653
Email: peter.glenn-applegate@usdoj.gov

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing Sentencing Memorandum of the United

States was served this 15th day of February, 2023, electronically upon counsel for the Defendant.

s/Peter K. Glenn-Applegate
PETER K. GLENN-APPLEGATE (0088708)
Assistant United States Attorney
